THE CITY OF JOLIET, Plaintiff-Appellant, v. JAMES L. GREGOREC, Defendant-Appellee.

(No. 72-208;

Third District—July 17, 1973.

James M. P. D'Amico and Thomas M. Monahan, both of Joliet, for appellant.

McKeown, Fitzgerald, Zollner, Buck, Sangmeister & Hutchison, of Joliet, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

The City of Joliet appeals from an order entered in the Circuit Court of Will County in which the court found, at the close of evidence presented by the city, that defendant James L. Gregorec was not guilty of the commission of the crime of theft in violation of section 21—3(a)(1) of the Ordinances of the City of Joliet. The ordinance referred to is substantially the same as section 16—1, ch. 38 of Illinois Revised Statutes.

While no court reporter recorded the testimony presented at the trial, the record before us has been supplied by defendant's counsel from his recollection pursuant to Illinois Supreme Court Rule 323(c). From such record it appears that defendant was observed by two witnesses for the city. One female security officer saw the defendant first carrying a woman's brown shirt in his hand, and then, when observed later, stated that the brown shirt was not being carried visibly. When the defendant was stopped by another security representative who said that he had reason to believe that the defendant had on his person some property which belonged to the store, defendant removed from his outer coat a woman's red shirt from one pocket and a woman's blue shirt from another pocket. The security officer later noticed a bulge in the groin area of defendant's trousers from which defendant then removed the woman's brown body shirt. All three shirts were the property of the store. Defendant had reached the cashier at a checkout counter but then turned and walked back to the main portion of the store. It was at that time that he was stopped and interrogated by the security personnel. The value of the shirts was $11.91.

The store was a Topps Discount Department Store, a self-service discount department store. The checkout counters were located near the exit and were separated from the area of the store in which the merchandise was generally found. The shirts were displayed within the merchandise area. The checkout counters were the only places in the store at

which payment could be made for merchandise. Defendant was specifically charged with knowingly exerting "unauthorized control over property * * * three woman's body shirts * * * with intent to deprive said Topps Discount Department Store permanently of the use or benefit of said property in violation of ordinance section 21—3(a)1." Joliet City Ordinance § 21—3(a)1.

Two security representatives of the Discount Department Store testified that they had respectively observed defendant when he first had the brown shirt in view and then when none of the shirts were in view, at the time defendant had moved first to the checkout counter, and then returned without going through the checkout counter. When the store security man asked defendant whether he had on his person some property which belonged to the store, defendant removed from his coat a woman's red shirt and a woman's blue shirt stating that he wished to return these shirts. The security man thereafter asked him, "What do you have in your pants?" Defendant replied, "Nothing." After he had been requested to go to the security office and had gone there, the security officer again asked defendant what he had in his pants and defendant reached into his pants and produced a woman's brown body shirt.

Upon trial of the cause, when the City had rested, the defendant moved for a finding of not guilty on the ground that the city's evidence was insufficient as a matter of law to sustain a conviction of theft. The court granted defendant's motion and explained the decision of the court by stating, "the city's evidence as presented and taken at its best may indicate that defendant may have had an intention to steal or deprive its owner of the use and benefit of its property, but until such time as this defendant passed the area where he could have made a purchase and paid for the merchandise or returned it, there is no theft." It is, therefore, clear that the court had the firm determination that no theft of the store's merchandise could have been committed irrespective of an intent presumed or shown, until the accused transported the items of the suspected theft beyond the cashier's counter where the customer would have been required to pay for the purchased items.

In *People v. Baker*, 365 Ill. 328, 6 N.E.2d 665 (1937), the accused had removed some women's silk suits from the third floor of the department store and took them into a restroom on the second floor. Later, she deposited the merchandise on a table in the restroom. Employees of the store saw her descend the stairway to the second floor. She was carrying her coat on her arm and tucking her coat in on the bottom. An employee saw her leave the restroom with her coat on and her hands across a protrusion at her abdomen. The employee followed the defen-

dant into the restroom, sat next to a table, left for a moment, and returned to find the garments on the table with defendant standing next to it. Other employees saw the items fall from beneath defendant's coat to the table as defendant was standing in the restroom. Another witness saw defendant take items from the store table and place them beneath her coat. Defendant testified that she never had secreted the articles beneath her coat, and that she had no intention of stealing them. In the *Baker* case, the defendant contended that there could be no larceny since the clothes were not taken from the store premises and, also, that the evidence was insufficient to establish the intent to steal. The jury found the defendant guilty and the Illinois Supreme Court affirmed such conviction.

While we note a distinction in the instant case from the *Baker* case, in view of the fact that in the *Baker* case a self-service store was not involved and payment was required to be made at various locations throughout the store, the facts and issues, however, are parallel. As stated in the *Baker* decision:

> "An essential element of larceny is a felonious taking by which the owner is deprived of possession and the thief acquires possession for an appreciable period of time, though such period may be but for a moment. It has been held that where the thief, having taken possession of the property and on being discovered abandons or returns it, he nevertheless has committed larceny. One who takes the goods of another and places them in a place convenient for removal is guilty of felonious taking of property. So where one, with intent to steal, takes property from the place where it is regularly kept the crime is complete though he is detected and stopped before the goods are actually carried from the owner's premises. Any change of location whereby the control of the article is, with intent to steal, transferred from the true owner to the thief is sufficient evidence of taking away." (365 Ill. 328, 332.)

See also: *People v. Lardner,* 300 Ill. 264, 133 N.E. 375 (1929), where the court found that larceny could be involved if the accused had taken possession of the owner's merchandise even if the merchandise had never been removed entirely from the owner's premises.

As stated in 50 Am.Jur.2d Larceny § 143; Larceny § 50, some shoplifting statutes penalize the concealment of unpurchased goods while still within the store premises. It is also pointed out that identical circumstances may support a criminal charge under either the shoplifting statutes or the larceny statutes. Unauthorized control, if involved through concealment of a garment, under circumstances justifying a conclusion

that such concealment is for the purpose of stealing the garment, can be a basis for prosecution even if the accused has not passed the checkout counter. There is no implied consent on the part of the owner to permit such type of concealment even though there is consent to permit the customer to carry the articles from the place where the articles may be displayed to the checkout counter for the purpose of paying for the articles. The only true issue which confronted the court in the instant case, in view of the evidence presented, was whether the evidence of concealment of the articles could sustain a factual finding that defendant possessed the requisite intent permanently to take the articles without paying for them and with intent to deprive the store owner of its shirts. In *People v. Baker*, 365 Ill. 328, 6 N.E.2d 665, the court stated (at 365 Ill. 332-333):

> "Intent may seldom be proved by direct evidence for the reason that one may not know what is in the mind of another, but intent may be deduced from acts committed and circumstances in evidence."

■■ In the cause before us, the concealment of the merchandise by defendant could be determined by a finder of fact to be inconsistent with the motive of purchasing and paying for such items. It is apparent, therefore, that the trial court erred in stating that even though defendant may have had the intention of stealing or depriving the owner of the use or benefit of his property, until such time as defendant passed the area where he could have made the purchase or return it, there is no theft. The taking of the articles and concealment if determined to be done with the intention of stealing or depriving the owner of the use or benefit of the property, however brief, could constitute a theft. The circumstance that the defendant, at that time, had not reached the area where the garments would be required to be paid for would not prevent a finding and conviction of the crime of theft in violation of the ordinance of the city of Joliet.

■■ For the reasons stated, therefore, the judgment of acquittal for the reasons as stated by the circuit court of Will County was improper and should be reversed. This case will, therefore, be reversed and remanded to the circuit court of Will County for retrial.

Reversed and remanded.

STOUDER and SCOTT, JJ., concur.